IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| BRIAN COFFEY | ) | CASE NO.: 1:18-cv-02675 |
| --- | --- | --- |
| Plaintiff, | ) ) ) | JUDGE: CHRISTOPHER A. BOYKO |
| v. | ) ) | |
| BUCKEYE SHAKER SQUARE DEVELOPMENT CORPORATION, et al. | ) ) ) ) | **PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS KENNETH JOHNSON AND GARNELL JAMISON** |
| Defendants. | ) ) | |

Pursuant to Fed. R. Civ. P. 55(a), Plaintiff requests that the Clerk of Courts issue an order of Default Judgment against Defendants Kenneth Johnson and Garnell Jamison. That rule states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." *Fed. R. Civ. P. 55(a)*.

Here, Plaintiff's Complaint was filed on November 19, 2018. *Case Docket*, at Exhibit 1, ECF No. 1. Defendants Johnson and Jamison failed to return requests for Waiver of Service of Summonses upon them. Thus, under Fed. Civ. R. 4(e)(1), Defendants Johnson and Jamison were to be "served following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."

Ohio's service rules are set forth in Ohio Civ. R. 4.1. Under Ohio Civ. R. 4.1(A)(1)(a), initial service of the summons and complaint may be made by United States

certified mail. Here, certified mail service was attempted upon Defendants Johnson and Jamison on February 22, 2019. *Case Docket*, at Exhibit 1, ECF No. 9. On March 25, the certified mail attempts to both Defendants were returned as "unclaimed." *See Return of Certified Mailings*, at ECF No. 11, and attached hereto as Exhibit 2.

Where certified mail service is returned as being "unclaimed," Ohio Civ. R. 4.6(D) provides the following procedure:

> If a United States certified or express mail envelope attempting service within or outside the state is returned with an endorsement stating that the envelope was unclaimed, the clerk shall forthwith notify the attorney of record or, if there is no attorney of record, the party at whose instance process was issued and enter the fact and method of notification on the appearance docket. If the attorney, or serving party, after notification by the clerk, files with the clerk a written request for ordinary mail service, the clerk shall send by United States ordinary mail a copy of the summons and complaint or other document to be served to the defendant at the address set forth in the caption, or at the address set forth in written instructions furnished to the clerk. The mailing shall be evidenced by a certificate of mailing which shall be completed and filed by the clerk. Answer day shall be twenty-eight days after the date of mailing as evidenced by the certificate of mailing. The clerk shall endorse this answer date upon the summons which is sent by ordinary mail. Service shall be deemed complete when the fact of mailing is entered of record, provided that the ordinary mail envelope is not returned by the postal authorities with an endorsement showing failure of delivery. If the ordinary mail envelope is returned undelivered, the clerk shall forthwith notify the attorney, or serving party.

That exact procedure was followed here. On April 15, 2019, Plaintiff requested service upon Defendants Johnson and Jamison via regular mail, and on April 16, 2019, the summons and complaint were sent via regular mail to those Defendants. *Case Docket*, at Exhibit 1, ECF Nos. 12, 13, and 14.

The prescribed twenty-eight day answer deadline expired on May 14, 2019, and Defendants failed to answer, move, or otherwise plead. The ordinary mail envelopes were not returned as undeliverable. Thus, under Fed. R. Civ. P. 4(e)(1) and Ohio Civ. R. 4.6(D), Defendants Johnson and Jamison are in default.

Pursuant to Fed. R. Civ. P. 55(b), Plaintiff further requests an entry of a default judgment against Defendants Johnson and Jamison in the amount of $130,178.44. "Once default has been entered, a defaulting defendant is considered to have admitted all the well-pleaded allegations relating to liability." *Bds. Of Trs. of the Ohio Laborers' Fringe Benefits Programs v. LA Williams Contr., LLC*, 2017 U.S. Dist. LEXIS 103200, at *4 (S.D. Ohio July 5, 2017). The relevant allegations in Plaintiff's Complaint, ECF No.1, establishing the liability of Defendants Johnson and Jamison include the following:

1. This case seeks to rectify and remedy Defendants' failure to pay promised wages to the hourly employees they engaged to perform grass-cutting, cleanup work, and other manual tasks. Regarding these unpaid wages, Plaintiff asserts that Defendants willfully violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, the Ohio Constitution art. II, § 34a, and common law. Plaintiff also asserts claims under the Ohio Fraudulent Transfer Act, Ohio Rev. Code Ann. § 1336.01, et seq., alleging that Defendants unlawfully transferred Buckeye Shaker Square Development Corporation's assets to themselves as well as to other persons and entities (sometimes collectively called "Transferee Parties") over which Defendants had effective control.

   \*\*\*

10. Defendant Garnell Jamison is a resident of Cleveland, Ohio and a principal owner, officer, or manager of Defendant BSSDC.

11. Defendant Kenneth L. Johnson is a resident of Cleveland, Ohio and a principal owner, officer, or manager of Defendant BSSDC.

    \*\*\*

17. The FLSA and Ohio law required BSSDC to pay employees for all hours they were "suffer[ed] or … permit[ted] to work." 29 U.S.C. § 203(g); O.R.C. § 4111.03(D)(1).

18. BSSDC did not pay Plaintiff, the Potential Opt-Ins, and the Ohio Class Members for all of the hours they were suffered or permitted to work. BSSDC failed to pay them at all for the hours they worked from mid-July through August 2018.

    \*\*\*

21. Defendant BSSSDC was as an "employer" of Plaintiff, the Potential Opt-Ins, and the Ohio Class Members within the meaning of the FLSA, 29 U.S.C. § 203(d).

22. Individual Defendants John Hopkins, Garnell Jamison, and Kenneth L. Johnson were "employers" pursuant to 29 U.S.C. § 203(d) in that they were "person[s] [who] act[ed] directly or indirectly in the interest of an employer," BSSDC, "in relation to employees," including Plaintiff, the Potential Opt-Ins, and the Ohio Class Members. Defendants Hopkins, Jamison, and Johnson were principal owners, officers, or managers of BSSDC. All had operational control over significant aspects of BSSDC's operations and day-to-day functions, including compensation of employees.

    \*\*\*

24. BSSDC, John Hopkins, Garnell Jamison, and Kenneth L. Johnson were joint employers of Plaintiff, the Potential Opt-Ins, and the Ohio Class Members under the FLSA and Ohio law.

25. At all times relevant, BSSDC, John Hopkins, Garnell Jamison, and Kenneth L. Johnson were an enterprise within the meaning of 29 U.S.C. § 203(r) and an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

    \*\*\*

27. Defendants willfully circumvented and violated the requirements of the FLSA and Ohio law. Defendants deliberately withheld compensation from the employees for the hours they worked in July and August 2018, and Defendants knew or had full reason to know that withholding their compensation would deprive them of minimum wages for the unpaid workweeks.

    \*\*\*

67. Assets of BSSDC have been transferred in substantial amounts to Transferee Parties related to BSSDC. The Transferee Parties include John Hopkins, Garnell Jamison, and/or Kenneth L. Johnson to whom BSSDC paid transfers include exorbitant salaries disproportionate to the services they rendered. BSSDC assets were also transferred in substantial amounts to other persons and entities over which Defendants had effective control.

68. The transfers of BSSDC assets by and to Defendants were "transfers" of "assets" within the meaning of Ohio Rev. Code Ann. § 1336.01.

69. The transfers of BSSDC assets violated Ohio Rev. Code Ann. § 1336.04. The transfers were made with the actual intent to hinder, delay, or defraud BSSDC's creditors, and rendered BSSDC unable to pay the obligations Defendants knew were being incurred to BSSDC's hourly employees. BSSDC made the transfers without receiving a reasonably equivalent value in exchange. When the transfers were made, BSSDC and Defendants Hopkins, Jamison, and/or Johnson were engaged in a business or transaction, or were about to engage in a business or transaction, for which the remaining assets were unreasonably small in relation to the business or transaction, and said Defendants intended to incur, or reasonably should have believed they would incur, debts beyond BSSDC's ability to pay as they became due.

70. The Transferee Parties were "insiders" within the meaning of Ohio Rev. Code Ann. § 1336.01.

71. The transfers of BSSDC assets further violated Ohio Rev. Code Ann. § 1336.05. One or more of their transfers were made after obligations to Plaintiff and other class members arose. Such transfers were made without receiving a reasonably equivalent value in exchange. When the claims of Plaintiff and other class members are taken into account, BSSDC was insolvent at the time of the transfers, or became insolvent as a result of the transfers.

***

75. BSSDC and Defendants Hopkins, Jamison, and/or Johnson planned and arranged to transfer assets of BSSDC to themselves and other Transferee Parties, and effectuated the transfers in furtherance of their plan.

76. As a direct and proximate result of the aforementioned conspiracy to commit fraudulent transfers, Plaintiff and other class members have suffered damages including but not limited to unpaid wages and interest.

As a result of Defendants Johnson and Jamison's default, the facts as stated with respect to those two Defendants give rise to liability for violations of the minimum wage and overtime pay requirements of the Fair Labor Standards Act and Ohio law, as well as breach of contract to pay wages, fraudulent transfer of the assets of Buckeye Shaker Square Development Corporation, and conspiracy to commit those fraudulent transfers.

With respect to the amount of damages, failing to pay any compensation whatsoever to employees for worked performed gives rise to a claim under Section 16(b) of the FLSA for the amount of unpaid minimum and overtime wages, and an equal amount in liquidated damages, plus attorneys' fees and costs:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages… The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

*29 U.S.C. § 216(b).*

The amount of unpaid wages due to each of the each of the 47 affected employees is set forth in Exhibit 3, and total $47,859.22. That amount is verified by the declaration of undersigned counsel, attached hereto as Exhibit 4. Adding two times that amount of unpaid wage for liquidated damages, per 29 U.S.C. § 216(b), totals $95,178.44.

Finally, the FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the

defendants, and the costs of the action." 29 U.S.C. § 216(b). The FLSA's mandatory fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502 (6th Cir.1984)). *Accord, Kritzer,* 2012 U.S. Dist. LEXIS 74994, at *28 (the fee award must be "adequate to attract competent counsel but … not produce a windfall) (citing *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)).

In *Gascho v. Global Fitness Holdings, Inc.*, 822 F.3d 269 (6th Cir. 2016), the Sixth Circuit reaffirmed its long-standing rule regarding class- and collective-action fee awards. "When awarding attorney's fees in a class action," *Gascho* emphasized, "a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Gascho*, 822 F.3d at 279 (quoting *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)). Court have discretion to select the appropriate method of determining such fees "in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *Gascho*, 822 F.3d at 279 (citing *Rawlings*, 9 F.3d at 516).

The percentage approach "more accurately reflects the results achieved." *Rawlings*, 9 F.3d at 516, *quoted with approval in Gascho*, 822 F.3d at 279-80. It is appropriate

in cases like this one because "it encourages early settlement, which avoids protracted litigation." *Gascho*, 822 F.3d at 279 (citing *Rawlings*, 9 F.3d at 516-17).

Applying *Fegley* and *Rawlings*, courts in the Sixth Circuit commonly approve one-third fee awards in FLSA collective actions. *See, e.g.*, *Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933, at *21 (N.D. Ohio Mar. 8, 2010) (citing *Rawlings* as well as *Jackson v. Papa John's,* Case No. 1:08CV2791 (N.D. Ohio 2008); *Fincham v. Nestle Prepared Foods Co.*, 1:08CV73 (N.D. Ohio 2008); *McGhee v. Allied Waste Indus.*, Case No. 1:07CV1110 (N.D. Ohio 2007)); *Bessey v. Packerland Plainwell, Inc.* 2007 WL 3173972 (W.D. Mich. 2007). *Accord*, *Feiertag v. DDP Holdings, LLC*, No. 14-CV-2643, 2016 WL 4721208, at *1 (S.D. Ohio Sept. 9, 2016) (approving 30% award.)

Courts reference the NERA study as "[t]he most complete analysis of fee awards in class actions conducted to date." *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000). *See Dillworth*, 2010 WL 776933, at *19-20; *Bessey*. 2007 WL 3173972, at *4 (citing study conducted by the National Economic Research Associates). The study found that "regardless of size, attorneys' fees average approximately 32% of the [class action] settlement," although "the average result achieved for class members was only 7% to 11% of claimed damages." *Shaw*, 91 F. Supp. 2d at 988 (citing NERA Study).

Here, Plaintiff requests that the default judgment award counsel fee and costs in the amount of $35,000, representing only 27% of the total judgment. Adding that to the class award requested above, Plaintiff requests a total judgment entered in the amount of $130,178.44.

Respectfully submitted:


*/s/ Scott Perlmuter*

Scott Perlmuter (0082856)
**TITTLE & PERLMUTER**
2012 West 25th Street, Suite 716
Cleveland, Ohio 44113
Phone: (216) 308-1522
Fax: (888) 604-9299
scott@tittlelawfirm.com

and

Thomas A. Downie (0033119)
46 Chagrin Falls Plaza #104
Chagrin Falls, Ohio 44022
Phone: 440-973-9000
tom@chagrinlaw.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on this 19th day of June, 2019, a copy of the foregoing *Plaintiff's Motion for Default Judgment* was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. A copy was served via Regular Mail to the following:

| | |
|---|---|
| Kenneth Johnson<br>2948 Hampton Road<br>Cleveland, OH 44120 | *Defendant* |
| Garnell Jamison<br>2948 Hampton Road<br>Cleveland, OH 44120 | *Defendant* |

*/s/ Scott Perlmuter*
Scott Perlmuter (0082856)