UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BRIAN COFFEY<br>On behalf of himself and all others<br>similarly situated,<br><br>　　　　Plaintiff,<br>v.<br><br>BUCKEYE SHAKER SQUARE<br>DEVELOPMENT CORPORATION,<br>et al.<br>　　　　Defendants. | CASE NO. 1:18-cv-02675<br><br>JUDGE CHRISTOPHER A. BOYKO<br><br>**PLAINTIFF'S BRIEF IN<br>OPPOSITION DEFENDANTS<br>JOHNSON AND JAMISON'S<br>RENEWED MOTION FOR LEAVE<br>TO FILE ANSWER INSTANTER** |

**I.   Introduction**

When this Court denied Defendants Johnson and Jamison's first attempt to avoid default judgment, it held that "[s]hould Defendants re-file their Motion for Leave, the Court requires each Defendant to submit an affidavit in support which demonstrates excusable neglect as provided in Fed.R.Civ.P. 6(b)." The affidavits they have submitted with their renewed motion consist of little more than bald fabrications and do not establish excusable neglect.

As demonstrated below, Defendants Johnson and Jamison were both verifiably aware of this lawsuit within days of its filing. Both Defendants say that (by some remarkable coincidence) neither of them received the service attempts by either certified or ordinary mail. That unlikely scenario is disproven by the Postal Service's mailing endorsements. And though both Defendants claim that they have not been served, their affidavits prove proper service of the Complaint under the Civil Rules. Implausible tales

like those told by Johnson and Jamison should not be endorsed as an avenue by which a defendant can show "excusable neglect" or otherwise avoid default judgment.

### II. An Abundance of Evidence Proves that Both Defendants Willfully Disregarded this Lawsuit

This lawsuit was filed on Sunday, November 18, 2018. The next day, November 19, 2018, Kenneth Johnson was interviewed by a Cleveland.com reporter about this case, telling the reporter that "the city is going to pay $42,000 as soon as this week to reimburse the workers, and that amount should cover all of the unpaid wages." That quote was reported in an article posted online on November 19, which was the first of several Cleveland.com stories about this lawsuit which noted that Defendants Johnson and Jamison were named parties. See Eric Heisig, *Cleveland Councilman Ken Johnson, Buckeye-Shaker group sued for unpaid wages*, https://www.cleveland.com/court-justice/2018/11/cleveland-councilman-ken-johnson-buckeye-shaker-group-sued-for-unpaid-wages.html (Nov. 19, 2018), attached hereto as Exhibit 1 (stating that "Johnson, the group, executive director John Hopkins and Johnson's council assistant Garnell Jamison are named as defendants.")

Garnell Jamison was also certainly aware of this lawsuit and his role in it within days of it being filed. Attached at Exhibit 2 with an authenticating declaration is a text sent by Garnell Jamison to one of the affected workers from November 26, 2018. When asked for an update as to when the workers would be paid, Jamison wrote that "we have money… because of lawsuit we are waiting for lawyers to advise us on how to distribute money… I [am] suppose[d] to get an up[]date this evening." Id.

2

To summarize: attached at Exhibits 1 and 2 is direct evidence that Defendants Johnson and Jamison were aware of the lawsuit the day after it was filed and were talking to journalists and lawyers about the distribution of money owed to the class. It belies logic and reason that conversations with journalists and their lawyers about this lawsuit did not include *any mention* of their role as Defendants.

On November 19, 2018, undersigned counsel also sent all of the Defendants, including Johnson and Jamison, Notices of the Lawsuit and Requests for Waiver of Service of a Summons care of Buckeye Shaker Square Development Corporation, attached at Exhibit 3. Two days later, on November 21, 2018, the Buckley King law firm entered an appearance on behalf of "Defendants." ECF No. 3. On November 29, 2018, the Buckley King law firm filed an "Amended Notice of Appearance" on behalf of BSSDC only. ECF No. 4. Then, on December 13, 2018, Defendants Buckeye Shaker Square Development Corporation ("BSSDC") and John Hopkins executed the waivers of service. ECF No. 6.

The representation of Defendants Johnson and Jamison, however, remained in question. Through mid-January 2019, there were evidently ongoing conversations among the several Defendants and their attorneys about who might be representing Johnson and Jamison. On January 11, 2019, undersigned counsel emailed the attorneys at the Buckley King firm to inquire if they knew who would be representing Johnson and Jamison. Exhibit 4. In response, attorney David Moore wrote that "[w]e also don't yet have an answer about representation of Messrs. Jamison and Johnson." Id. at page 1. Again, it is beyond comprehension that these months-long conversations about who may be

3

representing Johnson and Jamison in this case never included - or were, at a minimum, brought to the attention of - Johnson and Jamison.

All of the aforementioned events occurred before formal service was ever attempted upon Johnson and Jamison. When it eventually became apparent that Johnson and Jamison were not going to willingly participate in this lawsuit, Plaintiff requested the issuance of formal service upon those Defendants. On February 22, 2019, counsel requested service by the Clerk on both Johnson and Jamison via certified mail. Both Johnson and Jamison admit that the places of service were their correct addresses. *Affidavit of Kenneth Johnson*, at ECF No. 25-2, ¶ 13, and *Affidavit of Garnell Jamison*, at ECF No. 25-3, ¶ 13. Service was attempted on March 18, 2019, and both were marked by the postal service as being "Unclaimed." *Returns of Certified Mail Service for Johnson and Jamison*, attached hereto as Exhibit 5. That endorsement means that the addressees "abandoned or failed to call for mail." *USPS Endorsements for Mail Undeliverable as Addressed*, attached hereto as Exhibit 6.

Garnell Jamison has never disputed that he received a certified mail notice of attempted delivery and chose to ignore it. Kenneth Johnson does not directly contest that fact either, but presumably contends that he did not receive the notice of the certified delivery attempt because he lives at an intersection and, as a result, "often [his] mail becomes undelivered." *Johnson Affidavit*, at ECF No. 25-2, ¶ 16. Belying his speculative excuse is the fact that the mail carrier did not mark the certified envelope with an endorsement commensurate with the excuse—one that would indicate that the carrier was unable to locate his house, such as "Attempted – Not Known," "No Such Number,"

4

or "Insufficient Address." See *USPS Endorsements for Mail Undeliverable as Addressed*, at Exhibit 6. Moreover, both Johnson and Jamison also admit that ordinary mail service sent on April 16, 2019 was directed to their correct address, and neither mailing was returned with any endorsement showing a failure of delivery. As laid out in Plaintiff's Motion for Default Judgment at ECF No. 17, the procedure described in the last two paragraphs equates to proper service under the Federal Rules of Civil Procedure.

Finally, on June 13, 2019, Plaintiff resolved his claims against BSSDC and John Hopkins, prompting Cleveland.com to run another story about this case – a copy of which is attached at Exhibit 7. The reporter again contacted Johnson and Jamison for that story, and wrote:

> Johnson could not immediately be reached for comment. Jamison hung up on a cleveland.com reporter when asked about the settlement. When the reporter called back, Jamison told the reporter to not call him again.

Eric Heisig. *Buckeye-Shaker group agrees to settlement with unpaid workers; Cleveland Councilman Ken Johnson never responded to suit*, http://www.cleveland.com/court-justice/2019/06/buckeye-shaker-group-agrees-to-settlement-with-unpaid-workers-cleveland-councilman-ken-johnson-never-responded-to-suit.html (June 13, 2019).

Yet, Johnson and Jamison claim that they were *still* unaware of their role in this lawsuit after those calls and the June 13, 2019 story. Both contend that they first became aware of their status as Defendants when the Motion for Default was served - both copies inadvertently to Johnson's house. Johnson says that, by some stroke of luck, he was standing in his yard this time to flag down his postal carrier and get the mailing.

### III.    <u>Johnson and Jamison's Neglect is not Excusable</u>

The determination of excusable neglect is "an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Serv. Co. v. Brunswick Assocs. P'ship,* 507 U.S. 380, 395 (1993). Five factors govern whether Defendants should be relieved of default under that standard:

(1) The danger of prejudice to the nonmoving party;

(2) The length of the delay and its potential impact on judicial proceedings;

(3) The reason for the delay;

(4) Whether the delay was within the reasonable control of the moving party; and

(5) Whether the late-filing party acted in good faith

*Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006). *Accord Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 at 395.

Here, none of the *Nafziger* factors cited above weigh in favor of Defendants' conduct being excusable.

### A. This Eleventh Hour Appearance by Defendants Would Greatly Prejudice Plaintiff

Plaintiff would be severely prejudiced by this late appearance by Defendants Johnson and Jamison, now that he has already settled with the co-Defendants (propping up an "empty chair" argument for Johnson and Jamison, and releasing the co-Defendants from further discovery obligations) and taken the steps to obtain a default judgment against Johnson and Jamison. *See Waifersong, Ltd., Inc. v. Classic Music Vending*, 976 F.2d 290, 291 (6th Cir. 1992), (holding that "vacating the judgment would prejudice plaintiffs

6

in view of plaintiffs' efforts to settle the dispute prior to taking the default judgment, as well as the expense incurred in connection with obtaining the judgment.")

### B. The Length of Defendants' Delay was Extensive

As set forth above, Defendants filed their Motion for Leave over 7 months after they were demonstrably aware of this lawsuit. The Motion was also filed 8 weeks and 1 day after Defendants were properly served with the Complaint, and, even if the Court were to accept their exceedingly suspect explanation, Defendants waited another two weeks after receiving the Motion for Default - until the *last possible day* – to seek leave to answer.

Delays far shorter than Defendants' have barred defaulting parties from being permitted leave under Fed. R. Civ. P. 6(b). See e.g. *Bartos v. Revenue Group*, 2007 U.S. Dist. LEXIS 24281 (N.D. Ohio March 21, 2007) (holding that "Revenue Group moves to file its late answer more than four weeks past the twenty-day deadline. This represents a lengthy delay, that negatively impacts the judicial proceedings"); *Howard v. Nationwide Prop. & Casualty Ins. Co.*, 306 Fed. Appx. 265, 267 (6th Cir. 2009) (holding, in denying a request for leave under Fed. R. Civ. P. 6(b), that a three-week delay caused a "significant impact on the judicial proceedings"); *Blazer v. Chrisman Mill Farms, LLC*, 2018 U.S. Dist. LEXIS 32482 (E.D. Ky. Feb. 28, 2018) (denying a request for leave under Fed. R. Civ. P. 6(b) involving a one-week delay).

7

**C. Defendants' Justification for the Delay is Disproven by Direct Evidence**

The Sixth Circuit considers the reason for the delay the most important factor in this test. *Morgan v. Gandalf, Ltd.*, 165 Fed. Appx. 425, 429 (6th Cir. 2006). The Defendants would have this Court rule that the justification prong of the "excusable neglect" standard can be met by a simple attestation, rebutted by actual evidence, that they "have never actually been served with the Complaint." This type of showing is simply insufficient to meet Defendants' requisite standard. *See In re Kloian*, 2007 U.S. Dist. LEXIS 38939, at **2-3 (E.D. Mich. May 30, 2007) (holding that "Fink, Debtor's previous counsel, merely avers that she never received notice of the order to show cause. This conclusory affidavit is wholly inadequate for purposes of establishing excusable neglect.")

Defendants' sworn attestations should carry no value given that the affidavits are squarely contradicted by direct evidence that they were properly served with the Complaint, including the postal service endorsements that prove proper service. The Ohio Supreme Court's take on the significance of an endorsement of "Unclaimed" on certified mail bears referencing here:

> When a postal return reads 'Attempted Not Known,' no purpose would be served by a follow-up ordinary mail letter sent to the same address. The 'Unclaimed' designation implies that the person may in fact reside or receive mail at the designated address but for whatever reason has chosen not to sign for the certified mail. In that situation, a follow-up communication by ordinary mail is reasonably calculated to provide the interested party with notice and an opportunity to be heard. Such a communication, not returned, bears a strong inference that the intended recipient received the letter. This is not so, however, with ordinary mail following the return of a certified letter with the endorsement 'Attempted Not Known.' The inference then is that the intended recipient does not reside or receive mail at the designated address and

8

>   is not known to the residents there. A follow-up letter in these circumstances would not permit a similar inference of receipt.

*In re Thompkins*, 115 Ohio St. 3d 409, 413 (Ohio 2007).

Simply put, there is no legitimate dispute that Defendants Johnson and Jamison received, and ignored, notice of an attempt at service via certified mail, and then were successfully served via ordinary mail and merely disregarded their obligation under Fed. R. Civ. P. 12(a)(1)(A)(i) to respond to Plaintiff's Complaint on or before May 7, 2019.

### D. The Delay was Entirely within Defendants' Control and Resulted from Defendants' Bad Faith

To summarize the arguments and evidence above, Defendants (1) discussed this lawsuit with attorneys, journalists, and class members repeatedly over the course of months, (2) were the subject of several media publications discussing their role as Defendants in this case, and (3) received proper service of the Complaint on or shortly after April 16, 2019. Their claims to ignorance of their status as Defendants in this suit are untrue - plain and simple.

As argued in Plaintiff Opposition to Defendants' first Motion for Leave to Answer Instanter, a defendant in default must make a bona fide showing of excusable neglect to seek relief from default. Judgment is uniformly entered against a defendant whose ostensible excuses for failing to appear are patently false or unsupported. *See, e.g.*, *Broadcast Music, Inc. v. J & S Entertainment, Inc.*, 2015 U.S. Dist. LEXIS 49643 (N.D. Ohio Apr. 15, 2015); *Gulfport Energy Corp. v. Sayre*, 2015 U.S. Dist. LEXIS 146921 (S.D. Ohio Oct. 29, 2015); *Wright v. MacConnell*, 2017 U.S. Dist. LEXIS 61129 (S.D. Ohio Apr. 21, 2017).

9

*Broadcast Music, Inc.* mirrors the instant case, because conversations with the plaintiffs' attorney established that the defendants knew about the lawsuit long before they claimed. Judge Katz rejected the defendants' false assertions and entered judgment:

> Plaintiffs have submitted evidence establishing that Defendant Lyons engaged in conversations with Plaintiffs' attorney as early as September 9, 2014, regarding this action. Although Defendants' counsel may not have received notice of the lawsuit until February 9, 2015, this does not excuse the fact that the time to file an answer is long overdue. Therefore, Defendants' motions to file their extremely late answer is denied.

*Id.* at **3-4. *See also Gulfport Energy Corp. v. Sayre*, 2015 U.S. Dist. LEXIS 146921, at *9 (S.D. Ohio Oct. 29, 2015) ("to accept Sayre's arguments would effectively read the word 'excusable' out of Rule 60(b)(1))").

## IV.  Defendants Johnson and Jamison Have Presented no Meritorious Defenses

Defendants' earlier motion for leave made no attempt to establish that they have a "meritorious defense." *United Coin Meter v. Seaboard Coastline RR*, 705 F. 2d 839, 845 (6th Cir. 1983). The renewed motion also fails on this issue. The new declarations submitted by Defendants Johnson and Jamison do not jibe with the facts.

For instance, both Defendants attest that they "know for a fact that all purported 44 class members have received their full wages." Their knowledge is dubious to say the least. First, there are 47 class members, not 44. See *Table of Unpaid Wages*, at ECF No. 17-3. Second, Exhibits 8 and 9, attached hereto, are direct evidence of instances where class members still have not received full wages to date. Exhibit 8 is time and pay records for class member A'Jeremiah Baker for the pay period July 1-14, 2018. That exhibit demonstrates that, for that two-week pay period, Mr. Baker worked 88 hours, including

48 hours the week of July 8-13, 2018. He was paid $730.40 for that pay period – i.e. all 88 hours at the 2018 minimum wage of $8.30 per hour. However, since the second week of that pay period, July 8-13, included 8 hours of overtime work, Mr. Baker was entitled to, but has not received, overtime premium pay of $99.60 for that pay period. At Exhibit 9, class member Cordell Respress-Davis' records show that he was also owed 3 hours of overtime for the week of July 8-13, 2018, but was paid all of his hours that pay period at the minimum wage of $8.30 per hour. The same overtime pay shortfall is present in the cases of class members Richard West, Eric Grayer, Tommy Grayer, Percy Spencer, and Demetrius Flemister.

Second, Johnson and Jamison simply ignore Plaintiff's allegations regarding their liability for violating the Ohio Fraudulent Transfer Act, Ohio Rev. Code Ann. § 1336.01, et seq. Plaintiff's Complaint avers that "[a]ssets of BSSDC [were] transferred in substantial amounts" to Johnson and Jamison, or to "other persons and entities over which [they] had effective control." Complaint at ¶ 68. The Complaint alleges that Garnell Jamison was paid by BSSDC an "exorbitant salar[y] disproportionate to the services [he] rendered," and that he was paid that salary at a time when BSSDC was incurring debts, like the wages owed to the class members, "beyond BSSDC's ability to pay as they became due." Id. at ¶¶ 68, 70. And Ken Johnson's steady stripping of benefits from BSSDC has been well-documented by the news media. See e.g. Mark Naymik, *Neighborhood Group Backed by Cleveland Councilman Ken Johnson Stiffs Young Workers on Paychecks*,http://www.cleveland.com/naymik/2018/10/neighborhood_group_backed_by_c_1.html (Oct. 25, 2018) attached hereto as Exhibit 10 (stating that "Councilman Ken

11

Johnson has been BSSDC's biggest benefactor, earmarking the federal grant money he controlled for the lots program. He often touted the program as a jobs program for the city's youth and he kept tight control over the program. Workers, for instance, drove city-owned trucks branded with Johnson's name. Johnson's council assistant, Garnell Jamison, also worked fulltime for BSSDC as one of the managers of the program. In addition, one of Johnson's sons, as well as Johnson's associate, Ozell Dobbins, were paid through the program.") The affidavits of Johnson and Jamison affidavits are completely silent about a defense to those fraudulent transfer allegations.

Finally, Defendants' affidavits both attempts to contest FLSA individual liability, stating in a conclusory fashion that each "was not the class members' employer, nor… have any management relationship with Buckeye Shaker Square Development Corporation." *Jamison Affidavit*, ECF No. 25-3, at ¶ 25. Yet, Plaintiff's complaint alleges that Defendants Johnson and Jamison "had operational control over significant aspects of BSSDC's operations and day-to-day functions, including compensation of employees." *Complaint* at ¶ 23. Such control is sufficient to bring them within the scope of "employer" liability pursuant to the FLSA, 29 U.S.C. § 203(d). *See, e.g.*, *Dole v. Elliot Travel & Tours, Inc.,* 942 F.2d 962, 965 (6th Cir. 1991), ("[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation and is jointly and severally liable under the FLSA for unpaid wages"); *Petit v. Dale Adams Enters.*, 2014 U.S. Dist. LEXIS 63685, at *31 (N.D. Ohio May 8, 2014) (an individual defendant "need only have 'operational control of significant aspects of the corporation's day to day functions'") (citing *Dole*, 942 F.2d at

965). Factors analyzed individual liability include "the individual's ownership interest in the corporate employer, check issuing ability, custody and control of employment records, ability to determine employment practices, involvement in hiring and termination of employees, setting salaries, and daily control over the business operations." *Wise v. T-Man, LLC*, No. 1:14 CV 630, 2016 U.S. Dist. LEXIS 84349, at *13 (N.D. Ohio June 29, 2016).

At a minimum, the evidence here significantly undercuts the reliability of Jamison's sworn affidavit. In keeping with the allegations in the Complaint, BSSDC's employees will attest that he was their supervisor. *See Darden Affidavit*, at Exhibit 2, ¶ 2. As the texts at Exhibit 2 also show, Jamison was in talks about class member pay with BSSDC's attorneys, a role that would seem to be reserved to those with significant control over an employer's operations. Attached hereto at Exhibit 11 are texts with the mother of another class member, in which Jamison discusses trying to find financing for the class members' unpaid wages and demonstrate his ability to reference that class member's employment records. These exhibits tend to disprove Jamison's self-serving attestation that he had no management relationship with BSSDC.

### C. Conclusion

Defendants first attempt to avoid default was cursory and offered no detail supporting their request. Their second attempt is rife with lies and implausible conjecture. For the reasons stated above, as well as the reasons stated in Plaintiff's filing at ECF No. 22, the Court should deny leave to Defendants Johnson and Jamison and grant Plaintiff's motion for default judgment.

Respectfully submitted,

s/ Scott D. Perlmuter
Scott D. Perlmuter (0082856)
2012 West 25th Street, Suite 716
Cleveland, OH 44113
216-308-1522
Fax: 888-604-9299
scott@tittlelawfirm.com

s/ Thomas A. Downie
Thomas A. Downie (0033119)
46 Chagrin Falls Plaza #104
Chagrin Falls, Ohio 44022
440-973-9000
tom@chagrinlaw.com

Attorneys for Plaintiff

## PROOF OF SERVICE

I certify that on this August 21, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

s/ Scott D. Perlmuter<br>
Scott D. Perlmuter (0082856)